All right, the next case that we have for argument is the State of Richard Ward v. Lucero. It is docket 25-1224. Counsel please proceed when you're ready. Good morning, Your Honors. I've been instructed to begin my oral argument from here. If that's all right with you. Yes. May it please the Court. My name is Alex Pass. I'm here today as counsel for defendants in this matter. Defendants are entitled to qualified immunity. The district court's order granting in part and denying in part defendants' motion for summary judgment failed to recognize and apply the unique but correct method of factual analysis relative to defendants' qualified immunity. Can I, I want to talk before we get to the merits about preservation. In your opening brief to this court, the entire argument was based on arguing that facts different than those that were found by the district court would have resulted in qualified immunity being proper. And of course, we don't have jurisdiction to consider facts other than those that were found by the district court. Then for the first time in your reply brief, you actually accept the facts that were found by the district court and make a different argument that is that even under those facts that you would prevail. Why isn't that waived? Why don't we, why aren't you stuck with the argument that you made in your opening brief over which we lack jurisdiction? Your Honor, I think the argument is twofold. One, we do argue facts different than what the district court found. I do believe that has to do somewhat with the argument we presented that the district court utilized the incorrect method of distinct factual analysis relative to the question of qualified immunity. Two, we are willing to accept the facts as viewed in light most favorable to the plaintiff. However, we also made an argument in the opening brief that those facts, I suppose, found by the district court even though... Well, they were found. They weren't supposed found. They were found by the district court. The issue with the facts found by the district court is that they utilized the incorrect method of distinct factual analysis and determined that they survived summary judgment due to genuine issues of material fact instead of utilizing the qualified immunity analysis determining that the facts are sufficiently grounded in the record. So, I would suppose that your argument is twofold. One, we are willing to accept those facts. But you weren't willing in your opening brief, which is why we have a waiver issue. You don't, as a general rule, get to change your argument in your reply brief. And so, I'm troubled. First of all, you know, despite your argument that you're making a legal argument to challenge the facts found, I have some problems with that. But in your opening brief, you never take on the facts as found by the district court. You simply say, these are the facts the district court should have found and we win. And then in your reply brief, you say, well, if we are stuck with the facts as found by the district court, we still win. I'm not sure you can do that. Your Honor, I believe we can if the facts are blatantly contradicted in the record. Okay, and if they're not blatantly contradicted in the record, then you would admit we don't have jurisdiction. Your Honor, I would not concede that we don't have jurisdiction. I believe if we are willing to concede the facts as presented in the appellee's brief found by the district court, we're still entitled to qualified immunity under the theory established on qualified immunity. So, even if we don't present the facts that we believe are blatantly contradicted in the record, which would provide jurisdiction anyway, and we utilize the facts as the district court found them, despite the incorrect method of factual analysis, we are still entitled to qualified immunity under the theory established by the appellee, which was presented in the reply brief in response to the appellee's brief. Counsel, can you speak more to your argument that the district court didn't engage in the right method of factual analysis? Sure. Under, I believe it's Thompson v. Salt Lake City, the concurrence is clear that it is improper to deny summary judgment predicated upon qualified immunity when the district court denies qualified immunity due to the existence of well-known issues of material fact that warrant a resolution by a jury. The district court orders were complete with inferences that genuine issues of material fact precluded summary judgment. And we honor that, right? Absent you showing an exception, if a district court says, I find a genuine issue of material fact on X, Y, and Z, we accept that. Your Honor, I would disagree to the extent that denying qualified immunity on those bases is improper as cited in the tensor. I'm not following you. Denying it on what bases? Denying qualified immunity due to the existence of genuine issues of material fact is improper. You mean if you challenge and defeat that there, in fact, is a genuine issue of material fact or not to have fun? What the district court should have done is accepting the facts that were most favorable to the plaintiffs, utilize those facts to create the worldview of facts that they can use to answer the issue of law, which is whether or not the deputies, in this case, were entitled to deny qualified immunity. And that's what the court did here. The district court said, here are the facts that I find a reasonable jury could find. And based on those facts, taking it in the light most favorable to the plaintiff at this stage, I believe a reasonable jury could find a constitutional violation here, right? That's not my reading of the order. What the order says is a reasonable jury could find these facts based on material, genuine material disputes as to these facts. Well, and that's correct, right? If there's a genuine issue of material fact at this stage, the district court has to resolve that in favor of the plaintiff. Would you agree with that? If those facts are sufficiently relevant and correct, then I would agree with that. I thought your argument, and maybe I misunderstood and you can help me understand it better. I thought your argument was that the district court just didn't apply the qualified immunity test and summary judgment standards correctly, that she did the analysis in the wrong order and improperly placed the burden on you. I thought that's what you were arguing as kind of the abstract question of law that we would have jurisdiction to review. In part, that is correct. So essentially, we moved through summary judgment based on the traditional summary judgment standard and pursuant to qualified immunity, because some plaintiff's claims were not subject to qualified immunity. So we couldn't move to qualified immunity. And that's why those issues are not being appealed, because we're not subject to interlocutory appeal at this time. So that is, in a sense, she only conducted a singular analysis as to the issue of whether or not it was subject to, or whether or not summary judgment was proper regarding all of the plaintiff's claims. And the qualified immunity analysis, if I recall correctly, is less than half a page. She doesn't discuss the facts. She determines that the laws were clearly established, utilizing two cases that both postdated by two and a half or more years the conduct that occurred in this case. But both of those cases, although the decision itself postdated, the cases that they relied on to say that it was clearly established were all before this incident. Isn't that correct? From 1989 to 2015, that's absolutely correct. Except Finch, the case that's cited within the case relied upon, was not published until July 5, 2022. So that also postdated the conduct in this case. And looking at those cases, with the Zuckel, the Spinharty, Orum, and the other cases, none of those cases clearly established that the conduct that the deputies in this case were presenting with was unconstitutional. Well, it all depends on the facts, right? I mean, if you give the plaintiff all the facts, then it's pretty horrific, and there are going to be some cases there that are going to say pretty horrific is clearly established. Can you help me with this? When you say the court erred with, in its determinations of a genuine issue of material fact, be concrete. Tell me what the district court found that the district court could not find, or how the district court attributed facts against your clients that the district court legally could not do. Be specific. As to which facts, though? That's the question. Do you have any? And if you don't, that's okay. We can move on. But that's what I'm curious to know the answer to. As to which facts? Well, which facts are you challenging that the district court found could be found by a jury? District court didn't find the facts. The district court said, based on everything that I've seen and has been presented to me, I would sustain a jury verdict against your clients because the jury could find facts X, Y, Z. And so I assume you're in here today challenging facts X, Y, Z. I am challenging facts. What are they? And I think it depends on if we're talking about whether or not the facts were blatantly contradicted by the record or whether the facts that she found a reasonable jury could find based on material factual disputes. One of the ones based on material factual disputes was whether or not Mr. Ward, the plaintiff, tackled the deputy, whether he head-butted the deputy and, quote-unquote, what he was doing at the time immediately preceding the officer-involved shooting. And we do see something on the video that doesn't seem helpful to you, which is, as the officer gets off of him, Mr. Ward, his, right before the shooting, his right arm is pinned against the officer, and at the end of the shooting as the officer gets back, his left hand is resting behind his head, which would suggest, doesn't compel a finding, but there's enough there to say a genuine issue of material fact that he wouldn't have been going for the gun at that point. Nobody's saying that the jury's commanded to determine something, just that there's enough there that a jury could attribute that, look at that and say, mm-hmm, here's what we think that means. Your Honor, I do understand that contention, but would also provide that the mere analysis that she undertook is a legal error. I have approximately three minutes, if I can make one point, to judge review. We were discussing whether or not the laws were clearly established despite Finch being published. Subsequent, which is the historical analysis, none of the cases cited in Finch were any of the suspects or individuals who were apprehended by police. None of them were physically engaged with the officers at the time of the shooting. All of them approximately were at least five to seven feet away, so none of them were, and plaintiff concedes that he was engaged for nearly half a minute in a wrestling match with the officer, out of school, as children were being released from school. So none of those cases fit the circumstances here. And with that, with two minutes left, I'd like to reserve my time, unless there's another question. Very well. Thank you, Your Honor. May it please the court and counsel. I'm Daryl Kilmer of Kilmer Lane, and along with my partner, Reid Allison, and with Laurie Newman, we represent the estate of Richard Ward and his mother, Christy Ward, who has her own case going on, too, and she's also the PR. She's with us in court today, too. Those of us who have been doing this type of work for a long time have definitely detected a trend that has turned into basic common script for defense attorneys in these cases of Section 1983. No matter how horrific the facts are, and no matter how almost indefensible what happened is, they know that they can have several tactical advantages by merely uttering the phrase qualified immunity in briefing, even if they don't believe it will be granted. And if it's not granted, then knee-jerk reactively appealing to the Tenth Circuit Court of Appeals and claiming that they have a right to an interlocutory appeal. Well, we're not here to assess the practices of the defense bar, so in this case, can you speak to why we should conclude that the district court found facts? I mean, she doesn't have a section that's titled Factual Findings, and the order of operations in her analysis, the way that she assesses qualified immunity at summary judgment seems kind of backwards. So can you help us understand, based on this order, why it's affirmable? Sure. Admittedly, there's not a section that says I find the following facts, but it's clear in reading the order that it's strewn throughout, and she says multiple times that based upon these facts, which are admittedly contradicted in some ways. There's material issues of disputed fact, but if you accept that, which is typically grounds to deny a summary judgment motion, except when qualified immunity is in play, you have to take the next step. If there's material issues of disputed fact, the district court and the court of appeals are required to accept that set of facts most favorable to the plaintiff that is tolerated by the record, and she did this throughout her opinion, saying yes, the video's a good example. The video, I think, very well supports our cause, including the detail that Judge Phillips just pointed out, but we concede the point that a jury might look at that and think that Mr. Ward did something wrong, and I don't know that they'll conclude that he had it coming to him, but that they would read it differently than we do. That means it's a material issue of disputed fact, but properly taking those facts in a light most favorable to Mr. Ward, a jury could very well find that this was excessive force under the circumstances, and Judge Sweeney carefully undertook the Graham versus Conner factors about what type of force would be proportional under these types of circumstances, and at each juncture said, this is disputed. But a jury could find, based on these disputes, in favor of the plaintiff on that. And what defense has argued in this case, and it was hard for me to get my brain around it for the longest time, as if there's some sort of mysterious alchemy involved in this second part of this analysis that Judge Sweeney did engage in robustly. But the defense seems to say that she was satisfied by simply announcing that there are disputed issues of fact, and then leaving it there, but that's not what she did. She announced that there are disputed issues of fact, and properly then moved on to say, if you looked at them, as I have to, in a light most favorable to the plaintiff, a jury could find that this was the first factor in Graham, that this was not a serious crime that was being investigated. The second factor, was there a threat to the officer in his mind there? That could go either way, and we concede it could go either way. A jury might think that this officer was headbutted. It's not shown by the video though, and the fact that it's not shown by the video is evidence that tends to favor the plaintiff too. None of this compels a jury result in favor of the plaintiff, but it certainly allows it. So is it your position that we don't have jurisdiction over anything in this appeal? There may be a... I would kind of like the opinion that you write to say that this is clearly established. It's not a big breach. I think it is clearly established. Well, we certainly have jurisdiction over that, right? That's right, and that's an answer to Judge Rossman's question. I think you can answer that question, because that is one of these large questions of law that are proper grounds for an interlocutory appeal. Well, if Judge Rossman is down her line, we don't have any cases either from the Supreme Court or this circuit where someone is literally wrestling with a police officer and it ends up being a deadly force case. Does that matter in terms of whether the law here is clearly established? It doesn't in this case, and the reason is the cases that this court has grappled with and found that there is no qualified immunity, the level of threat, which is the most important of the grand factors in determining the proportionality of the force used. These people had knives, sometimes guns, sometimes the officer said they thought they had a gun or something like that. All of these were higher levels of threat than Richard Ward had presented. In fact, Richard Ward had been basically self-searching himself while sitting in the car and the officer had found out he does not, in fact, have a gun. There's no good reason to believe he has a gun. And the only thing the officer has then is while we're wrestling around, this guy might go for my gun. And he now has sort of doubled and tripled down saying he did go for my gun. The problem is that's disputed and he killed the witness that would best be able to dispute it. What about the removal from the car? Is that part of our focus on whether that itself was excessive force that started the whole thing literally rolling? You know, we have some cases that say if the officer actually recklessly created... Now, I have some questions based on Supreme Court decisions whether the Supreme Court agrees with us on that. Well, most recently in Barnes v. Felix, the Supreme Court seemed to agree with the Tenth Circuit. And I got to say the Tenth Circuit had the best body of law in the nation on the reckless conduct creating the need to use increased levels of force. But this Court's opinions in Sevier v. Lawrence, in Allen v. Muscovy, in Ceballos v. Husk, all of those stand for the proposition that to answer your question directly, Judge McHugh, absolutely you should look at the yanking him out of the car. I mean, the fella ate a pill, an anxiety pill, and that for whatever reason set McWhorter off. And he just said, and this is a key piece of evidence, it's not like he thought he was going for a gun or something. He yelled out, what did you just put in your mouth? Well, I think their argument is that he might have been trying to hide evidence. A pill? Well, it could have been an illegal drug, right? I suppose. It wasn't. It was an actual prescribed anti-anxiety pill. You can't look with 20-20 hindsight, right? I mean, it's what the officer in that moment thought when he grabs something out of his pocket and pops it in his mouth. Fair. I mean, we certainly have cases where people quickly swallow quantities of drugs. I can understand that might concern an officer. It certainly doesn't rise to the level of probable cause. And it certainly doesn't rise to the level of a serious enough crime to go hands-on. And you saw the video. He goes hands-on and pulls him out and he's right on top of him. And his colleague, Officer Gonzalez, is standing right there too. And Richard is fairly described as kind of shocked that this is all going on. There's more to the story, though, there. The officer says, and the video confirms, that he's upset that he's put something in his mouth. The officer is, what did you put in? And then he reaches for a pocket in his coat. And the officer now claims that he was concerned about a weapon, right? The officer does claim that. And for purposes of this appeal, you know, the jury's going to weigh whether he thinks that was a weapon. That's very convenient. But he is contemporaneously, as he's dragging him out of the car, he didn't say, are you going for a gun or something like that? He says, what did you put in your mouth? And he's pulling him out. And he says it's just a pill. It's just a pill. It's just a pill. He says it kind of desperately, which is true. I mean, the autopsy shows the drug was in his mouth. And our evidence will show at trial that that was prescribed by his doctor who was coaching him through, you know, some addiction issues. Is there any basis to say that it's justified, the shooting was justified apart from the potential of Mr. Ward obtaining the firearm from the officer? There is no, no. There is no basis for the use of deadly force into the scrum. If they were scrambling for a loose holstered gun, then that would be a basis. Conceivably. That would definitely be fraught with disputed issues. And so what I thought you might say something about today is the holster lock and the decision to take the firearm out of the holster. I'm glad you brought that up, Your Honor. We have, I think, the foremost expert in police practices who testified that there is in fact a holster lock and it renders extremely low credibility to the argument that McWhorter makes that I thought he was going to give my gun because those things do have a holster lock designed for that very purpose to stop somebody from getting a gun. So our, you might know this, but our theory of the case is that McWhorter is making this up as a post hoc rationalization because there's no way to defend use of excessive force on an unarmed man under these circumstances. But if I could get the jury to believe, he's thinking, that he's not only, he's probably not unarmed or he's trying to become armed, then I might have a fighting chance at this case. That all kind of comes up later, but he'll lose it. I mean, a jury is entitled to accept it if they believe him, I suppose, but they're certainly entitled to reject it. It's all just a big, genuine issue of material fact. That's what it is. That's what it is. Counsel, further to Judge McHugh's question, what cases would we cite, in our opinion, to support the clearly established law prong of the test? Of the shooting? Yes. Of the shooting, yeah. I think the clearly established cases would be, as Judge Sweeney did, the State of Harmon v. Salt Lake County, Clerkley v. Holcomb, and Finch v. Rapp, but also, long been held in the Tenth Circuit, that Zuckel v. Spinharni, which was decided in 1989, talks about using deadly force on somebody that is unarmed or underarmed. Walker v. City of Orem is also a very important and clear case, and that was decided in 2006. But none of those cases, you know, the argument earlier this morning is correct. These are not cases where they're rolling around on the ground fighting with an officer. They're cases where there's some distance. And they're cases... Some of them are close, though. And this is hand-to-hand combat with an unarmed person? Well, and again, does the officer know he's unarmed? He said he had a pocketknife. He said he might have a pocketknife. It turns out he didn't. You know, the officer said, do you have any weapons? Right. Because he's already asked him to look for his ID. It turns out he didn't is irrelevant to us right now.  But even if he had a... What did the officer know at the time? We don't get to say, well, later when they searched him after he was dead, there was no pocketknife. This is what the officer knew. He certainly didn't know that he had a pocketknife because he didn't. But he knew that Richard had said, I might have a pocketknife as he's searching his pockets for the ID that was being demanded. Right. And so, I mean, and you might be right. A jury might, I don't know if it would be proper, but I can't stop them from speculating on whether this is an unarmed man or a man who's got a pocketknife. They would have to, in the middle of a scrum, take it out. Yeah, I'm focused on clearly established. I'm not focused on constitutional evaluation. And the question that Judge Rossman just asked you listed a bunch of cases. And, you know, it's really how particular do we need to be? The Supreme Court has told us that in the Fourth Amendment area, unlike some other areas, we have to be pretty specific.  And so a general overarching rule that you can't shoot an unarmed person or a general rule that you can't use lethal force unless you are at risk of serious harm to yourself or someone else, are those good enough under the parameters that the Supreme Court has given us on clearly established law? That's right. I think they are. And the cases that this court has decided were closer cases than this one on that. And when it was decided by this court, it helps clearly establish that if you don't have qualified immunity and the man is wielding a knife five feet in front of you or a gun 20 feet back, then you wouldn't have qualified immunity here. The case that you authored recently,  it wasn't wrestling on the ground, but it was a prone position case. Well, they sat on him long enough to kill him. Yes, they did.  But it was an unarmed defendant and the use of the prone restraint in that case turned out to be deadly force and it helps. I'm not saying we're relying on that, but it is another example as well as the case that Judge Phillips authored recently, Baca v. Cosper, which was just about four months ago in November of 2025. These cases are among, I think, a substantial body of law that if an officer read them, that's the fiction that we have on qualified immunity. If the officer had these cases in their knowledge, they would say, if I don't get qualified immunity under those much more closer calls because there was a higher level of threat, which is the most important factor in the Graham v. Conner factors, then I certainly can't do this on this guy who I might fear. I'm not necessarily second-guessing him. I might fear that he has a weapon, but there's no evidence of it and there's no probable cause of it. And at its core, the Fourth Amendment is what prohibits excessive force. And at its core, it requires probable cause, not some sort of fear that something bad might happen and there was no probable cause. All right, Counsel, you need to wrap it up. You're over time. Okay, thank you. Okay, thank you. That's a quick wrap-up. I don't know that I've ever got a quick wrap-up like that. All right, Counsel, you have reserved time and you get an extra minute if you need it. So, please proceed. Thank you, Your Honor. There are just a couple issues. First, I'd like to address the holster lock. The holster lock is not intended to prevent fire. It's to prevent that fire from falling out while an officer is running or perhaps wrestling with a suspect on the ground. Clearly, the holster lock didn't prevent a technical border from removing the firearm itself. So, any inference that a suspect cannot remove a firearm from a political vlog poster is beyond the pale. Well, how does it work? The officer knows how to unlock it, obviously. It's just a little thumb switch. But I wouldn't know how. It's just a thumb switch, Your Honor. If somebody pulls on it hard enough, the firearm is coming out. Okay. It really is to prevent the firearm from being removed while an officer is running or falling out while an officer is running. Second, I would like to to state that the level of generality that Plaintiff's Counsel wants the court to rely on is even greater than that struck down in Rolodex in Bristol. In those cases, it dealt with officers firing at either a moving vehicle or a front-moving vehicle and the Supreme Court or or Tensor clearly established that those cases required more specificity. In these cases, all of the cases presented by Plaintiffs and the District Court, all of the officers had an opportunity to retreat. That was not possible in this case. The officers were wrestling on the ground for nearly half a minute while the suspect didn't comply with compliance techniques that Officer Gonzalez was utilizing was listening to no commands to stop and was instead yelling, yeah boy and come on boy as he followed the officers. You know, I can't hear that. Yeah boy, come on boy. Uh huh. It is an undisputed fact. I There was no dispute in the record. We'll look at that. Yeah, we'll look at that. I believe there was at one point an enhanced version of the audio. It is undisputed that he yelled, yeah boy, come on boy. And second of all, it's undisputed that Officer McWhorter was injured during the struggle. Where the dispute comes in is whether or not that injury was the result of a headbutt. Um, but you're talking about the bloody lip. The blood, uh, broken nose. Oh, he got a broken nose. Yeah. Alright, is that it,  Um, I guess one, in my last 20 seconds, I would argue that any inference that Muskegee is similar in this case um, is, is incorrect. Um, in this case they were interviewing a suspect who turned away from the officers, swallowed what was believed to be contraband to destroy the evidence and reached into his jacket pocket creating an exigency that caused the officers to remove the jacket. That is so dissimilar to Muskegee that I don't think that's correct. Okay, thank you counsel for your arguments. The case is submitted and you are excused.